

U.S. Department
of Transportation

**Pipeline and Hazardous
Materials Safety
Administration**

1200 New Jersey Avenue, SE
Washington, D.C. 20590

JUNE 24, 2013

### VIA CERTIFIED MAIL AND FAX TO: (210) 403-7578

Ryan Coffey, Executive Vice President, Operations
Florida Gas Transmission Company, LLC
800 E. Sonterra Blvd., #400
San Antonio, TX 78258

**Re: CPF No. 4-2013-1014H**

Dear Mr. Coffey:

Enclosed is a Corrective Action Order issued by the Pipeline and Hazardous Materials Safety Administration in the above-referenced case. It requires Florida Gas Transmission Company, LLC, to take certain corrective actions with respect to its Line 200 natural gas pipeline that failed on June 18, 2013, near the town of Enon in Washington Parish, Louisiana. Service is being made by certified mail and facsimile. Service of this Corrective Action Order by facsimile or other electronic means is complete upon transmission or acknowledgement of receipt, as provided under 49 C.F.R. § 190.5. The terms and conditions of this Order are effective immediately upon service.

Thank you for your cooperation in this matter.

Sincerely,

*for:* Jeffrey D. Wiese
Associate Administrator
for Pipeline Safety

Enclosure
cc: Mr. Alan Mayberry, Deputy Associate Administrator for Field Operations, OPS
    Mr. Rod Seeley, Director, Southwest Region, OPS
    Mr. Jeff Whippo, Vice President Operations Services, Florida Gas Transmission Company, LLC
    Mr. Eric Amundsen, Vice President Technical Services, Florida Gas Transmission Company, LLC

EXHIBIT C

U.S. DEPARTMENT OF TRANSPORTATION
PIPELINE AND HAZARDOUS MATERIALS SAFETY ADMINISTRATION
OFFICE OF PIPELINE SAFETY
WASHINGTON, D.C. 20590

| | |
|---|---|
| In the Matter of ) | |
| ) | |
| Florida Gas Transmission Company, LLC, ) | CPF No. 4-2013-1014H |
| ) | |
| Respondent. ) | |

## CORRECTIVE ACTION ORDER

### Purpose and Background

This Corrective Action Order (Order) is being issued, under the authority of 49 U.S.C. § 60112 and 49 C.F.R. § 190.233, to require Florida Gas Transmission Company, LLC (FGT or Respondent), to take the necessary corrective action to protect the public, property, and the environment from potential hazards associated with a recent failure involving FGT's Line 200 natural gas pipeline in Louisiana.

On June 18, 2013, a failure occurred on a 30-inch diameter section of Respondent's Line 200 pipeline near the town of Enon in Washington Parish, Louisiana, resulting in the release of an unknown quantity of natural gas. The cause of the failure has not yet been determined.

Pursuant to 49 U.S.C. § 60117, the Pipeline and Hazardous Materials Safety Administration (PHMSA), Office of Pipeline Safety (OPS), initiated an investigation of the incident. The preliminary findings of the ongoing investigation are set forth below.

### Preliminary Findings

- FGT, an affiliate of Panhandle Eastern Pipe Line Company, LP, operates approximately 5,400 miles of interstate pipelines that transport natural gas from south Texas to south Florida.[1] Approximately 674 miles of the pipelines in FGT's system are in the State of Louisiana. FGT's natural gas pipelines in Louisiana include an original 24-inch diameter

---

[1] Panhandle Eastern Pipe Line Company, LP, is a subsidiary of Southern Union Company, which is owned by Energy Transfer Partners, LP, through ETP Holdco Corporation. *See* http://www.panhandleenergy.com/comp_fld.asp; http://www.energytransfer.com/overview_sug.aspx (last accessed June 21, 2013).

mainline, designated as "Line 100," that was constructed in the 1950s and later "looped" with parallel of 26-inch diameter, 30-inch diameter, and 36-inch diameter pipelines.[2]

- The "Line 200" pipeline is a loop line that includes a 26-inch diameter section that starts at the Buller Compressor Station at Mile Post (MP) 440.6 in western Louisiana and runs to the Zachary Compressor Station in Zachary, Louisiana at MP 559.3; and a 30-inch diameter section that starts west of the Zachary Compressor Station at MP 520.1 and runs approximately 548 miles to Brooker, Florida. Portions of the 30-inch diameter section of Line 200 run through populated areas, environmentally sensitive areas, and cross state and local highways.

- The 30-inch diameter section of Line 200 includes two adjacent sections on the upstream and downstream sides of the Franklinton Compressor Station (located at MP 64.8) that are designated as LAMEB-8 and LAMEB-9, respectively.

- The pipeline failed on June 18, 2013, at approximately 6:49 a.m. CST on the 30-inch diameter LAMEB-9 segment near MP 65.3, approximately 0.5 miles east of the Franklinton Compressor Station.

- The force of the rupture ejected a 75-foot-long section of pipe from the ground and the escaping natural gas ignited, causing a fire that burned a nearby forest area and damaged a residential dwelling and power transmission lines in the area. Various federal, state and local agencies, including PHMSA, responded to the scene of the failure. One person was hospitalized and emergency responders evacuated the area and extinguished the fire.

- FGT shut down the pipeline compressors and closed the nearest upstream and downstream main line valves to minimize further release of product. FGT reported the failure to the National Response Center at 7:30 a.m. on June 18, 2013 (NRC Report No. 1050774).

- The 30-inch diameter section of Line 200 was originally constructed in 1966. It consists of Grade X60 pipe manufactured by Kaiser, has a wall thickness of 0.344," has a double submerged arc welded (DSAW) seam, and has Bucote coating.

- The maximum allowable operating pressure (MAOP) of the Line 200 segment on which the failure occurred is 974 psig. At the time of the failure, the actual operating pressure of the pipeline at the failure site was approximately 952 psig.

- Respondent has removed a 125-foot portion of the pipeline, including the failure origin, and is transporting it to a metallurgical lab for failure analysis. The LAMEB-9 portion of Line 200 remains out of service between Main Line Valve (MLV) 9-0 at the Franklinton Compressor Station and MLV 9-1.

- The cause of the failure is still undetermined and the investigation is ongoing. A preliminary visual examination of the failed pipe at the scene indicated the possible presence of external corrosion.

---

[2] The system also includes various laterals.

- This is the second failure on Line 200 in the past 16 months. On February 13, 2012, a failure at pressures corresponding to similar pipe stress levels occurred on LAMEB-8 between the Zachary Compressor Station and MP 8.1. This failure was determined to have been caused by external corrosion.[3]

**Determination of Necessity for Corrective Action Order and Right to Hearing**

Section 60112 of Title 49, United States Code, provides for the issuance of a Corrective Action Order, after reasonable notice and the opportunity for a hearing, requiring corrective action, which may include the suspended or restricted use of a pipeline facility, physical inspection, testing, repair, replacement, or other action, as appropriate. The basis for making the determination that a pipeline facility is hazardous, requiring corrective action, is set forth both in the above-referenced statute and 49 C.F.R. § 190.233, a copy of which is enclosed.

Section 60112 and the regulations promulgated thereunder provide for the issuance of a Corrective Action Order without prior opportunity for notice and hearing, upon a finding that failure to issue the Order expeditiously will likely result in serious harm to life, property, or the environment. In such cases, an opportunity for a hearing will be provided as soon as practicable after the issuance of the Order.

After evaluating the foregoing preliminary findings of fact, I find that continued operation of the pipeline without corrective measures would be hazardous to life, property, and the environment. Additionally, having considered the unknown cause of the failure; the location of the failure; the proximity of the pipeline to populated areas, highways, and environmentally sensitive areas; and the nature of the product being transported; and the prior failure on the pipeline, I find that a failure to issue this Order expeditiously to require immediate corrective action would result in the likelihood of serious harm to life, property, or the environment.

Accordingly, this Corrective Action Order mandating immediate corrective action is issued without prior notice and opportunity for a hearing. The terms and conditions of this Order are effective upon receipt.

Within 10 days of receipt of this Order, Respondent may request a hearing, to be held as soon as practicable, by notifying the Associate Administrator for Pipeline Safety in writing, with a copy to the Director, Southwest Region, PHMSA (Director). If a hearing is requested, it will be held telephonically or in-person in Houston, Texas or Washington, D.C.

After receiving and analyzing additional data in the course of this investigation, PHMSA may identify other corrective measures that need to be taken. In that event, Respondent will be notified of any additional measures required and amendment of this Order will be considered. To the extent consistent with safety, Respondent will be afforded notice and an opportunity for a hearing prior to the imposition of any additional corrective measures.

---

[3] The LAMEB-8 pipe that failed in 2012 was also constructed in 1966, consisted of 30-inch diameter, Grade X60 pipe manufactured by Kaiser, had a wall thickness of 0.344," and had a double submerged arc welded (DSAW) seam. On February 24, 2012, PHMSA issued a Notice of Proposed Safety Order [CPF No. 4-2012-1001S] in connection with this failure and resulted in a pressure reduction and other required remedial actions.

**Required Corrective Actions**

Pursuant to 49 U.S.C. § 60112, I hereby order Florida Gas Transmission Company, LLC, to immediately take the following corrective actions with respect to the 30-inch section of Line 200:

1. *Metallurgical Testing.* Complete metallurgical testing and analysis of the failed pipe as follows:

    A. Document the chain-of-custody when handling and transporting the failed pipe section and other evidence from the failure site;

    B. Within 10 days of receipt of this Order, submit to the Director a proposed selection of the testing laboratory and proposed metallurgical testing protocol if different from PHMSA's testing protocol for prior approval.

    C. Prior to commencing the mechanical and metallurgical testing, provide the Director with the scheduled date, time, and location of the testing to allow a PHMSA representative to witness the testing; and

    D. Ensure that the testing laboratory distributes all resulting reports in their entirety (including all media), whether draft or final, to the Director at the same time as they are made available to Respondent.

2. *Root Cause Failure Analysis.* Amend the Root Cause Failure Analysis (RCFA) of the 2012 in-service failure of the LAMEB-8 line to incorporate the June 18, 2013 LAMEB-9 failure, and expand its scope to include the contributing factors as identified in the metallurgical analysis for both failures. The RCFA must ensure that the management practices applied to the oversight of FGT's corrosion and integrity programs are included in the scope of the failure analysis and proposed remedial actions. The RCFA must document all contributory factors and the basis for recommended actions. Submit a final report of the RCFA results to the Director, including any lessons learned and whether the findings are applicable to other locations on Line 200.

3. *Restart Plan.* Develop and submit a written re-start plan for prior approval of the Director, Southwest Region. The restart plan must provide for the completion of all necessary repairs at the failure site, provide for adequate patrolling of the pipeline during the restart process, and specify a daylight restart and provide for advance communications with local emergency response officials. Obtain written approval from the Director prior to resuming operation.

4. *Pressure Restricted Segment.* After receiving approval from the Director to restart the pipeline, the pressure in the LAMEB-9 segment running from the Franklinton Compressor Station at MP 64.8 to the Wiggins Compressor Station at MP 128.8 (Pressure Restricted Segment) is not to exceed 80% of the actual operating pressure in effect immediately prior to the failure, or 762 psig. Further, FGT must ensure that the reduced operating pressures in the Pressure Restricted Segment will not exceed 65% of specified minimum yield strength (SMYS) for this segment. This pressure restriction

requires that any relevant pressure control equipment, including remote or local alarm limits, software programming set-points or control points, and mechanical over-pressure protection devices, be adjusted accordingly. If the results of any action undertaken pursuant to the Order necessitate a reduction in the operating pressure permitted by the Order, FGT must further reduce the operating pressure accordingly and notify the Director. This pressure restriction will remain in effect on the Pressure Restricted Segment until written approval to increase the pressure or return the segment to its pre-failure operating pressure is obtained from the Director.

5. *Removal of Pressure Restriction.* The Director may allow the removal or modification of the pressure restriction set forth above upon a written request from Respondent demonstrating that restoring the Pressure Restricted Segment to its pre-failure operating pressure is justified, based on a reliable engineering analysis showing that the pressure increase is safe, considering all known defects, anomalies and operating parameters of the pipe in this segment.

6. *Remedial Work Plan.* Within 90 days after completing the metallurgical testing and RCFA, submit a remedial work plan ("Work Plan") to the Director for approval. The Work Plan must provide for the verification of the integrity of the 30-inch section of Line 200 and must address all factors known or suspected in the failure, including but not limited to the following:

    A. A written plan for: (1) the identification and remediation of areas of failed coating through methods capable of finding failed coating; and (2) the re-evaluation of FGT's integrity management process for determining corrosion growth rates and determining appropriate inspection and integrity assessment intervals in areas where failed coating may exist, to ensure that assessments and repairs are completed prior to external corrosion failures.

    B. The integration of the results of the failure analyses and other actions required by this Order with all relevant operating data for the 30-inch section of Line 200, including all historical repair information, construction, operating, maintenance, testing, metallurgical analysis or other third-party consultation information, and assessment data;

    C. The performance of additional field testing, inspections, and evaluations, to determine whether and to what extent the conditions associated with the failure or any other integrity-threatening conditions are present elsewhere on the pipeline. The results of the inspections, field excavations, and evaluations must be made available to PHMSA or its representative;

    D. The performance of repairs or other corrective measures that fully remediate the identified risk conditions associated with the pipeline failure and any other integrity-threatening condition identified under this Order. Based on the known history and condition of the pipeline, the plans for repairs must include continuing long-term periodic testing and integrity verification measures to ensure the ongoing safe operation of the pipeline, considering the results of the analyses, inspections, and corrective measures undertaken pursuant to the Order;

      E. A proposed schedule for completion of Items A–D.

7. *Incorporation and Revisions.* The Work Plan will be incorporated by reference into this Order. Respondent must revise the Work Plan as necessary to incorporate the results of actions undertaken pursuant to this Order and whenever necessary to incorporate new information obtained during the failure investigation and remedial activities. Submit any such plan revisions to the Director for prior approval. The Director may approve plan elements incrementally.

8. *Implementation.* Implement the Work Plan as approved by the Director, including any revisions to the plan.

9. *Reporting.* Submit quarterly reports to the Director that: (1) include all available data and results of the testing and evaluations conducted pursuant to this Order; and (2) describe the progress of the repairs or other remedial actions being undertaken. The first quarterly report is due on September 15, 2013. The Director may change the interval for the submission of these reports.

10. *Documentation of the Costs.* It is requested but not required that Respondent maintain documentation of the costs associated with implementation of this Corrective Action Order. Include in each monthly report submitted, the to-date total costs associated with: (1) preparation and revision of procedures, studies and analyses; (2) physical changes to pipeline facilities, including repairs, replacements and other modifications; and (3) environmental remediation, if applicable.

11. *Approvals.* With respect to each submission that under this Order requires the approval of the Director, the Director may: (a) approve, in whole or part, the submission; (b) approve the submission on specified conditions; (c) modify the submission to cure any deficiencies; (d) disapprove in whole or in part, the submission, directing that Respondent modify the submission, or (e) any combination of the above. In the event of approval, approval upon conditions, or modification by the Director, Respondent shall proceed to take all action required by the submission as approved or modified by the Director. If the Director disapproves all or any portion of the submission, Respondent must correct all deficiencies within the time specified by the Director, and resubmit it for approval.

12. *Extensions of Time.* The Director may grant an extension of time for compliance with any of the terms of this Order upon a written request timely submitted demonstrating good cause for an extension.

The actions required by this Corrective Action Order are in addition to and do not waive any requirements that apply to Respondent's pipeline system under 49 C.F.R. Part 192, under any other order issued to Respondent under authority of 49 U.S.C. § 60101 et seq., or under any other provision of Federal or State law.

Respondent may appeal any decision of the Director to the Associate Administrator for Pipeline Safety. Decisions of the Associate Administrator shall be final.

Be advised that all material you submit in response to this enforcement action is subject to being made publicly available. If you believe that any portion of your responsive material qualifies for confidential treatment under 5 U.S.C. 552(b), along with the complete original document you must provide a second copy of the document with the portions you believe qualify for confidential treatment redacted and an explanation of why you believe the redacted information qualifies for confidential treatment under 5 U.S.C. 552(b).

Failure to comply with this Order may result in the assessment of civil penalties and in referral to the Attorney General for appropriate relief in United States District Court pursuant to 49 U.S.C. § 60120.

In your correspondence on this matter, please refer to CPF No. 4-2013-1014H and for each document you submit, please provide a copy in electronic format whenever possible.

The terms and conditions of this Corrective Action Order are effective upon receipt.

for- *[signature]*
Jeffrey D. Wiese
Associate Administrator
 for Pipeline Safety

JUN 2 4 2013
Date Issued