UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JANIE THIGPEN, ET AL.** | * | **CIVIL ACTION NO.** |
| PLAINTIFFS | * | 14-CV-01415 c/w 15-CV-1749 |
| | * | |
| **VERSUS** | * | **SECTION: "J"    MAG: (1)** |
| | * | |
| **FLORIDA GAS TRANSMISSION** | * | **JUDGE: Carl Barbier** |
| **COMPANY, LLC  ET AL** | * | |
| DEFENDANTS | * | **MAGISTRATE: Sally Shushan** |
| | * | |
| **This Pleading Applies to All Related Cases** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE
FIRST SUPPLEMENTAL AND AMENDED COMPLAINT**

MAY IT PLEASE THE COURT:

Plaintiffs herein though undersigned counsel file the following Reply Memorandum to address issues raised in the Memorandum in Opposition to Plaintiffs' Motion for Leave to File their First Supplemental and Amended Complaint in this matter.

The Thomas Plaintiffs could have filed their cause of action in Texas where the two-year statute of limitations (prescription) had not run at the time that their suit was filed.  As such, this matter has not prescribed and leave to amend the original complaint should be granted since no prejudice or disadvantage for Defendants exists.  The Thomas Plaintiffs filed their Complaint in the Eastern District of Louisiana where the Thigpen matter was pending in the interests of judicial economy and assuring Seventh Amendment consistency of judicial outcomes.  Further, the necessary discovery played a large role in the decision to file in this proceeding rather than beginning a new proceeding in Texas.  The initial disclosures filed in Thigpen by Defendant,

Florida Gas, listed over 50 individuals with knowledge of the claims who will need to be deposed.[1] This is certainly only the tip of the iceberg of the discovery necessary to prepare this matter for trial. Conducting simultaneous discovery in Texas and Louisiana would entail duplicative and cost prohibitive efforts as well as two different Courts making crucial decisions about the scope and nature of discovery. Notably, the discovery in this matter remains the same whether it proceeds with or without the First Supplemental and Amended Complaint. Both Louisiana and Texas have personal jurisdiction over the parties in this litigation and either forum would be appropriate for adjudication.[2]

These and other reasons previously briefed support the filing of the Thomas Complaint in the Eastern District of Louisiana which could manage the entirety of the case while applying the substantive laws of the States of Texas and Louisiana as well as crucial federal jurisdiction. Plaintiffs maintain that the Texas statute of limitations applies herein and supports denial of Defendant's Motion to Dismiss. Both the Thigpen and Thomas Plaintiffs' causes of action arise from the same facts and occurrences; therefore they should be heard in the same court. This line of reasoning is supported by the fact that the Thigpen and Thomas matters were consolidated before this Honorable Court. Under Louisiana Civil Code Art. 3549, "[w]hen the substantive

---

[1] Notably, Plaintiffs are filing a Motion for Leave to filed Notices of Deposition in excess of the 10 depositions allowed by Rule 26.

[2] The constitutional limitations on the reach of the personal jurisdiction of a court are now quite familiar. The exercise of personal jurisdiction over a nonresident defendant comports with due process principles only when two requirements are met. First, the nonresident defendant must have "purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts' with that forum state." *Felch v. Transportes Lar-Mex, Sa De CV,* 92 F.3d 320, 323 (5th Cir.1996) (citing *Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir.), *cert. denied,*513 U.S. 930, 115 S. Ct. 322, 130 L. Ed. 2d 282 (1994); *International Shoe Co. v. Washington,* 326 U.S. 310, 315-17, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945)); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475-77, 105 S. Ct. 2174, 2184, 85 L. Ed. 2d 528 (1985). Second, the exercise of personal jurisdiction over the nonresident defendant "must not "offend "traditional notions of fair play and substantial justice." ' " *Felch,* 92 F.3d at 323 (quoting *Wilson,* 20 F.3d at 647; *Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 113-15, 107 S. Ct. 1026, 1033, 94 L. Ed. 2d 92 (1987))

law of another state would be applicable to the merits of an action brought in this state, the prescription and preemption law of this state applies except as specified below: (1) **[i]f the action is barred under the law of this state, the action shall be dismissed unless <u>it would not be barred in the state whose law would be applicable to the merits and maintenance of the action in this state is warranted by compelling considerations of remedial justice.</u>"³**

Notably, the instances where courts have dismissed complaints and the subsequently allowed a Plaintiff to amend and refilled their complaints were in instances where a Motion for Leave to Amend and the proposed pleading were not filed prior to the ruling of the Court on a motion to dismiss.⁴  In the present situation, it is Plaintiffs' position that the Motion to Dismiss is unwarranted on the face of the pleadings and the public record that may be the subject of judicial notice by this court. However **out of abundance of caution and to clarify with additional specificity the claims of the original Complaints filed in Thigpen and Thomas, a Proposed First Supplemental and Amending Complaint was filed in the record prior to the ruling of the Court on the Motion to Dismiss.  Plaintiff's respectfully request its First Supplemental and Amending Petition allowed to be added to the record by leave of court under Rule 15 as is within  the wide discretion of this Honorable Court.**   Accordingly, "leave to amend must be freely given, that generous standard is tempered by the necessary power of a district court to manage a case." ⁵  This Honorable Court may grant leave and allow

---

³ Smith v. ODECO, No. 92-C-2711, 615 So2d 407 ((2/26/1993).
⁴ See, *United States ex rel. Hebert v. Dizney*, 295 Fed. Appx. 717, 721 (5th Cir. La. 2008),c*iting, Rosenzweig v. Azurix Corp.*, 332 F.3 at 854, 865 (5ᵗʰ Cir. 2003), *(citing, Whitaker v. City of Houston,* 963 F.2d 831, 835 (5ᵗʰ Cir. 1992). "*In this Circuit, when a district court dismisses the complaint, but does not terminate the action altogether, the plaintiff may amend under Rule 15(a) with permission of the district court.*
⁵ *Shivangi v. Dean Witter Reynolds, Inc.,* 825 F.2d 885, 891 (5th Cir. 1987)

discovery to commence as to all of the claims asserted in the Thigpen and Thomas Complaints in the interest of fundamental fairness as well as case management of this mass tort claim.

The defendant argues that the First Supplemental and Amending Complaint states new causes of action not previously alleged. This assertion is without merit. The following allegations from the original Complaint filed in the Thigpen matter and also contained in the Thomas Complaint support Plaintiffs opposition to the Motion to Dismiss and are merely expanded and alleged with more specific in the First Supplemental and Amending Complaint. Contrary to the arguments of Defendant, the Original complaints did not merely allege Louisiana causes of action or theories of recovery to the exclusion of Texas law. The basis for the Amendment is to more specifically make the allegations as to Texas, Louisiana and Federal law. Further the theory of an ongoing tort of the **continued corrosion**[6] of the pipeline from Texas to Louisiana is also plain from the Original Petitions, as follows:

Both the Thigpen and Thomas Complaints read as follows and support the contention that Texas law should Apply: "**Florida Gas Transmission Company, L.L.C.**, ("Florida Gas") a foreign Corporation authorized to do and doing business in the State of Louisiana and within the jurisdictional boundaries of the United States District Court for the Eastern District of Louisiana" and "Defendant, Florida Gas, is domiciled in the State of Delaware, **with its principal place of business being in the State of Texas."**[7] Additionally, Plaintiffs have alleged the following:

---

[6] Defendants wrongly place emphasis on the *Hogg vs. Chevron, No. 09-2632 (La. 2010); 45 So. 3d 991, this case stands for* the theory that ongoing release of gas is not an ongoing tort. Plaintiff's herein do not allege that there is an ongoing gas leak but rather ongoing corrosion of the pipeline which remains unrepaired, and thus, the risk of repetitive explosions and damage resulting from the unmitigated corrosion (continued unlawful acts).

[7] See, relevant portions of Thigpen Original Complaint Paragraphs 3 & 4

"22. At all times relevant hereto, the Pipeline was owned and/or maintained and/or manned and/or possessed and/or managed and/or controlled and/or chartered and/or operated by Florida Gas.

23. The rupture, fire and explosion of the Pipeline and the damage resulting therefrom was caused by the negligence of Defendant, Florida Gas, which renders Florida Gas liable jointly, severally, and *in solido* to the Plaintiffs and Class Members for all their damages sustained as a result of the incident forming the basis of this suit.

24. The rupture, explosion, and fire forming the basis of this suit is the **second incident of pipeline failure experienced by Florida Gas's Line 200 within a sixteen month period**. Specifically, on February 13, 2012, a portion of the Pipeline having nearly identical construction, manufacture, diameter, and operational capacity, ruptured near the Zachary Compressor Station, under similar operating pressures. Upon information and belief, the Pipeline rupture that occurred on February 13, 2012, was **caused by corrosion** of the exterior wall of the Pipeline.[8]

Likewise the following paragraphs of the original complaints supports the fact that allegations of **continuing torts** and permanent nuisance claims as well as theories of negligence exist under both Texas and Louisiana as well as Federal statutes regarding interstate gas pipeline safety:

"25. **Continued use of the Pipeline following** the February 13, 2012, rupture constituted an unreasonable risk of harm to the public, as Defendant, Florida Gas, had actual and/or constructive knowledge of the dangerous condition that existed, namely corrosion of the Pipeline, and **failed to take any remedial and/or corrective action to remedy the situation**, as is evidenced by the fact that the incident complained of herein is the second occurrence of a failure of the Line 200 natural gas transmission pipeline within a sixteen month period, and Plaintiff and the Members of the Class sustained damages as a result of the rupture, explosion, and fire that occurred on June 18, 2013.

26. The injuries and damages suffered by Plaintiffs and Class Members were caused by Defendant's violations of numerous statutes and regulations, including, but not limited **to, the Pipeline Inspection, Protection, Enforcement, and Safety Act of 2006 (49 U.S.C. 601, *et seq*.); the Gas Integrity Management Rule (49 CFR §192(O)),** including the federally mandated requirements to take **corrosion**

---

[8] See, Allegations in Paragraphs 22-24, of the Original Thigpen Complaint and corresponding paragraphs in the Thomas Complaint at issue herein.

> **resistance measures and properly test natural gas transmission pipelines at regular intervals.**

27. Florida Gas knew of the dangers associated with the transmission of natural gas through the Pipeline and failed to take appropriate measures to prevent damage to Plaintiff, the Class Members, and the environment and areas, where Plaintiff and the Class Members reside, work, relax, and earn a living."[9]

28. The Pipeline's rupture, explosion, and fire have caused **and will continue to cause loss** of revenue and equity value to persons and businesses, including but not limited to Plaintiff and the Class Members, who have sustained a loss in their property values as a result of this incident, as continued operation of the Pipeline poses an unreasonable risk of harm to any individual(s) located within a two mile radius of the Pipeline.

29. T**here are many other potential effects from the Pipeline rupture, fire, and explosion that have not yet become known, and Plaintiffs reserve the right to amend this Class Action Complaint once additional information becomes available**.

Furthermore, the paragraphs 39 from the Thigpen and Thomas Complaints support a finding that the allegations alleged in said complaints on their face support denial of the Motion to Dismiss based on prescription since these actions by Defendants occurred in Texas and Louisiana as well as Federal law.  Further, for reasons set forth in Plaintiffs' opposition to the Motion to Dismiss the allegations support a showing on the face of the pleadings that Texas's two-year statute of limitations is applicable to the claims."[10]

The claims alleged herein have a substantial relationship to the Defendant, Florida Gas and its operations activities that arise in Texas rather than Louisiana.   Excerpts from allegations previously alleged in the Thigpen and Thomas Original Complains are listed below:

"39. The sole and proximate cause of the incident forming the basis of this suit and the injuries and damages sustained by Plaintiff, Janie Thigpen, [as well as the individually named Plaintiffs in the Thomas Complaint] … as a result thereof, was

---

[9] See, Allegations in Paragraphs 22-27, of the Original Thigpen Complaint and corresponding paragraphs in the Thomas Complaint at issue herein.
[10] See, Thigpen Complaint, paragraphs, 25-29 (Rec. Doc. 1) (Emphasis added).

the gross and wanton negligence, carelessness and recklessness of Defendant, Florida Gas Transmission Company, L.L.C., in the following non-exclusive particulars, to-wit:

a. Failing to properly operate the Pipeline[11]";

b. Operating the Pipeline in such a manner that a rupture, fire and explosion occurred;

c. Failing to properly inspect the Pipeline to ensure that it was fit for its intended purpose;

d. Acting in a careless and/or negligent manner without due regard for the safety of others;

e. Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations of the Pipeline which, if Defendant had so explosion and fire;

f. Operating the Pipeline in an unsafe manner by employing untrained and/or unlicensed personnel to operate the Pipeline;

g. Inadequate training and/or hiring of personnel;

h. Failing to take appropriate action to avoid and/or mitigate the incident;

i. Negligent implementation of policies and procedures to safely conduct natural gas transmission operations designed to prevent the type of incident detailed herein;

j. Employing untrained and/or poorly trained employees and/or failing to properly train their employees;

k. Failing to ascertain that the Pipeline and its equipment were free from defects and/or were in proper working order;

l. Failing to timely warn;

m. Failure to timely bring the natural gas release under control;

n. Failure to keep appropriate accident prevention and response equipment on hand so as to quickly respond to the type of incident detailed herein;

---

[11] Of note, to the best of plaintiffs belief, the vast majority of these allegations about the pipeline occur in Texas.

o.     Failure to observe and read gauges that would have indicated excessive pressures in the Pipeline;

p.     Failure to react to danger signs and/or signals;

q.     Failing to properly inspect and test the Pipeline to ensure its fitness for use and its structural integrity, as proper inspection and testing f the Pipeline would have revealed that corrosion on the interior and exterior walls of the Pipeline which presented an unreasonable risk of harm during natural gas transmission operations;

r.     Failing to timely inspect and test the Pipeline to ensure its fitness for use and its structural integrity, as timely inspection and testing of the Pipeline would have revealed that corrosion on the interior and exterior walls of the Pipeline which presented an unreasonable risk of harm during       natural    gas    transmission operations;

s.     Failing to take remedial and/or corrective action to repair the Pipeline while having actual knowledge of the unreasonably dangerous condition presented by **the corrosion on the interior and exterior walls of the Pipeline;**

t.     Operating a Pipeline that was unreasonably dangerous under the    circumstances;

u.     Continuing natural gas transmission operations while having actual knowledge of the rupture that occurred on a different segment of the same Pipeline, namely the rupture that occurred on February 13, 2012, near the Zachary Compressor Station, under similar operating pressures;

\* \* \*

w.     Failing to adequately inform the various federal, state, and local agencies that responded to the incident of the magnitude of the potential danger posed by the Pipeline before the explosion and fire were brought under control;

x.     Failing to implement and employ an adequate set of procedures for the evacuation of individuals when a rupture occurs and hazardous material(s), including but not limited to natural gas, is released into the atmosphere and environment." [12]

---

[12] See, Thigpen Complaint, Paragraphs 39; see also, (45) Plaintiff, Janie Thigpen, and the Members of the Class, expressly plead the doctrine of *res ipsa loquitur* in connection with all claims set forth herein, as the injuries and damages sustained by Plaintiff and the Class Members would not have occurred but for the acts and/or omissions of Defendant, Florida Gas Transmission Company, L.L.C.; (46) Plaintiffs and the Class Members are entitled to a judgment holding the Defendants liable to Plaintiffs and the Class Members for damages suffered as a result of Defendants' negligence and awarding Plaintiffs and the Class Members adequate compensation therefore in an amount determined by the trier of fact; (47) . The acts and/or omissions of Defendant, Florida Gas, and/or its

Finally, as evidenced by Paragraph 53 of the Thomas Complaint, injunctive relief and declaratory relief were requested where by "Plaintiffs demand that Defendant, Florida Gas, be ordered, to inspect, test and take remedial and corrective action so as to ensure that incidents similar to those forming the basis of this suit do not occur in the future."

Alternatively, since the Opposition filed by Defendants asserts that they would be inconvenienced by over a 100 depositions of individuals listed in their Initial Disclosures[13], Plaintiffs assert that in spite of their choice of forum based on pending actions in this District Court these matters may be transferred to a Texas District Court based on *forum non conveniens* pursuant to 28 U.S.C. §1404 rather than dismissing the claims of Plaintiffs and denying the instant motion. This Court has previously held that "[a] district court may transfer any civil action to any other district in which it might have been brought for the convenience of the parties and witnesses or if such transfer is found to be in the interest of justice", and "in determining whether to transfer venue in a particular case, 'the court must exercise its discretion in light of the particular circumstances of the case'". [14] The overriding principle that govern allowing the amendment of Plaintiffs complaint and continuing this matter in this Court also support transferring this matter to a Federal District Court in Texas, since the law requires that "the court must balance two categories of interests: 1) the so-called private interests, which take into

---

employees, and/or representatives and/or agents have caused Plaintiff, Janie Thigpen and the Class Members to sustain injuries and damages; (49) Defendant, Florida Gas, is vicariously liable for the acts and omissions of its employees, representatives and/or licensed dealer and thus, the law of vicarious liability is applied herein as if set forth in extenso."

[13] This is particularly relevant since Plaintiffs do not know the locations of the individuals listed.

[14] *Morgan v. Metro. Life Ins. Co.*, 2003 U.S. Dist. LEXIS 6540, 3-7 (E.D. La. Apr. 14, 2003), citing, 28 U.S.C. § 1404(a) and *Hanby v. Shell Oil Co.*, 144 F. Supp.2d 673, 676 (E.D.Tex. March 5, 2001)/

account the convenience of the litigants, and 2) the public interests, which take into account the fair and efficient administration of justice."[15]

                                            Respectfully Submitted,

                                            __/s/Shawn C. Reed_____
                                            SHAWN C. REED (No. 14304)(T.A.)
                                            KYLE DEL HIERRO (No. 21557)
                                            516 N. Columbia Street
                                            Covington, Louisiana 70433
                                            Telephone: (985) 893-3607
                                            Facsimile: (985) 893-3478

                                            D. DOUGLAS HOWARD, JR. (No. 7021)(T.A.)
                                            JONATHAN C. PEDERSEN (No. 32290)(T.A.)
                                            839 St. Charles Avenue, Suite 306
                                            New Orleans, Louisiana 70130
                                            Telephone (504) 581-3610
                                            Facsimile (504) 581-7509

                                            ─ AND ─
                                            WILLIAM H. ARATA (#23431)(T.A.)
                                            216 Austin Street
                                            Bogalusa, LA 70427
                                            Telephone: (985) 735-1368

                                            Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

      I hereby certify that on July 27, 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                                            */s/Shawn C. Reed*
                                            SHAWN C. REED

---

[15] *Id.*