## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANIE THIGPEN, ET AL. | * | CIVIL ACTION NO. |
| PLAINTIFFS | * | 14-CV-01415 c/w 15-CV-1749 |
| | * | |
| VERSUS | * | SECTION: "J"    MAG: (1) |
| | * | |
| FLORIDA GAS TRANSMISSION | * | JUDGE: CARL BARBIER |
| COMPANY, LLC  ET AL | * | |
| DEFENDANTS | * | MAG.: SALLY SHUSHAN |
| | * | |
| This Pleading Applies to All Related Cases | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### SECOND SUPPLEMENTAL AND AMENDING COMPLAINT

All named Plaintiffs in the above captioned and consolidated cases bring this action against Defendant, Florida Gas Transmission Company, L.L.C., and respectfully submit the following:

I.

Paragraph 1 of Plaintiffs' Original Complaint and First Supplemental and Amending Complaint is to be supplemented and amended in order to read as follows:

1.

### PRELIMINARY STATEMENT

This action is brought to recover damages suffered by Plaintiffs as a result of the rupture and explosion of "Line 200," a natural gas transmission pipeline owned, operated and maintained by Defendant, Florida Gas Transmission Company, L.L.C., (hereinafter "Florida Gas") on June 18, 2013, at approximately 5:25 a.m. CST, near Enon, Louisiana. Following the explosion, flames engulfed the area surrounding the site of the rupture and explosion and, quite literally,

scorched the earth. Local government and law enforcement officials implemented an immediate and mandatory evacuation of the area until the explosion and fire could be brought under control. As a direct result of this rupture, explosion and fire, Plaintiffs sustained damage to their homes, property, bodily injuries, diminution of their property values, experienced mental and emotional distress, and experienced other damages.

1(a).

Plaintiffs additionally bring this action based upon the ongoing, continuous tortious conduct of Florida Gas Transmission Company, L.L.C., for the continued operation of the Pipeline while having actual and/or constructive knowledge of its current state of deterioration which renders the Pipeline unfit for continued usage without substantial remedial measures being taken. Additionally, Plaintiffs bring this action based upon the continuing tortious conduct of Florida Gas for persistent, and ongoing pressure releases, that have occurred and that continue to occur following the June 18, 2013, rupture, which cause toxic chemicals, chemical components and gasses, all of which are harmful to human health, to be released into the atmosphere, which causes Plaintiffs to experience ongoing bodily injury, as well as exposure to toxic substances. Additionally, following the June 18, 2013, incident, Plaintiffs have heard, and continue to hear, a deep rumbling sound being emitted from the Florida Gas compressor station located near Franklinton, Louisiana, which causes Plaintiffs to experience continued mental and emotional stress and anxiety.

II.

Paragraphs 2 through 19 of Plaintiffs' Original Complaint and First Supplemental and Amending Complaint are to remain the same.

III.

Paragraph 20 of Plaintiffs' Original Complaint and First Supplemental and Amending Complaint is to be supplemented and amended in order to read as follows:

20.

The rupture, explosion, and fire forming the basis of this suit is the second incident of pipeline failure experienced in Line 200 by Florida Gas  within a sixteen month period. Specifically, on February 13, 2012, a portion of the Pipeline having nearly identical construction, manufacture, diameter, and operational capacity, ruptured near the Zachary Compressor Station, under similar operating pressures. Upon information and belief, the Pipeline rupture that occurred on February 13, 2012, was caused by corrosion of the exterior wall of the Pipeline.

20(a).

Despite having actual and/or constructive knowledge of the of the dangerous condition that exists, namely corrosion of the Pipeline, upon information and belief, Florida Gas has not taken any measure to repair and/or replace those portions of the Pipeline that are corroded, but that have not yet ruptured.

IV.

Paragraph 21 of Plaintiffs' Original Complaint and First Supplemental and Amending Complaint is to be supplemented and amended in order to read as follows:

21.

Continued use of the Pipeline following the February 13, 2012, and June 18, 2013, ruptures constitutes an unreasonable risk of harm to the public, as Defendant, Florida Gas, had actual and/or constructive knowledge of the dangerous conditions that exist, including but not limited to, corrosion of the Pipeline, and Florida Gas has failed to take any remedial and/or corrective action to remedy the situation, as is evidenced by the fact that the incident complained of herein is the second occurrence of a failure of the Line 200 natural gas transmission pipeline within a sixteen month period, and Plaintiffs sustained damages as a result of the incidents that occurred on February 13, 2012, and June 18, 2013, and through the continued use and operation of the Pipeline in its current state of disrepair.

21(a).

The decision to continue the use of the Pipeline following the incidents that occurred on February 13, 2012, and June 18, 2013, including the current use of the Pipeline, was made by the executives, directors, employees, and agents of Florida Gas, all of whom, upon information and belief are residents and domiciliaries of the State of Texas.

21(b).

Prior to the rupture that occurred on June 18, 2013, Florida Gas conducted pressure releases whereby natural gas, toxic chemicals, components and gasses, and other substances, all of which are harmful to human health, to be released into the atmosphere. Prior to the June 18, 2013, rupture, these pressure releases were

conducted on a sporadic basis and could be heard by persons located within the vicinity of the Pipeline, and/or valves located along the Pipeline, and/or the compressor station located in Franklinton, Louisiana, which is owned and/or operated and/or maintained by Florida Gas.

21(c).

When operation of the Pipeline resumed following the June 18, 2013, incident, Florida Gas resumed its practice of conducting pressure releases whereby natural gas, toxic chemicals, components and gasses, and other substances, all of which are harmful to human health, are released into the atmosphere.

21(d).

The pressure releases that have occurred, and that continue to occur, following the June 18, 2013, incident are overt, persistent, and ongoing.

21(e).

The pressure releases that have occurred, and that continue to occur, after the June 18, 2013, incident are louder, last longer, and occur with significantly greater frequency that those releases that occurred prior to the June 18, 2013, incident.

21(f).

The pressure releases that have occurred, and that continue to occur, sound similar to the noise made by jet engines and can be clearly heard and identified by Plaintiffs who reside within and/or are located within the vicinity of the Pipeline

and/or the compressor station in Franklinton, Louisiana, and/or the valve(s) from which the pressure release is occurring.

21(g).

The excessive noise caused by the continued pressure releases has caused and continues to cause Plaintiffs the experience aggravation that rises to a level much higher than an inconvenience.

21(h).

The increased frequency of the long, loud pressure releases following the June 18, 2013, rupture have caused, and continue to cause Plaintiffs to experience mental stress, fear, and anxiety.

21(i).

The ongoing, long, loud pressure releases have caused and continue to cause Plaintiffs to experience mental stress, fear, and anxiety, as the long, loud pressure releases are a constant reminder of the June 18, 2013, rupture, fire, and explosion, and causes Plaintiffs within the vicinity to constantly fear that another explosion similar to that of June 18, 2013, will occur again in the immediate future.

21(j).

The long, loud pressure releases following the June 18, 2013, rupture are a direct violation of local customs concerning noise and the use and enjoyment of one's property and/or residence.

21(k).

The long, loud pressure releases following the June 18, 2013, rupture have caused and continue to cause a disruption in Plaintiffs' daily activities, which is a nuisance and constitutes a continuing tort.

21(l).

The long, loud pressure releases following the June 18, 2013, rupture have caused and continue to cause a substantial interference and infringement upon Plaintiffs' right to enjoy their land and/or residences, which is a nuisance and constitutes a continuing tort.

21(m).

The ongoing, long, loud pressure releases following the June 18, 2013, rupture are injurious and offensive to Plaintiffs, who are neighbors of Defendant, Florida Gas, and who own and/or reside upon the neighboring property and/or in the vicinity of the Pipeline, and/or the compressor station, and/or the valves located along the Pipeline.

21(n).

Defendant, Florida Gas, holds certain rights to the immovable property where the Pipeline, compressor station, and valves are located, and Defendant, Florida Gas, has caused damages to Plaintiffs who also hold rights to their neighboring property.

21(o).

Florida Gas has not been granted a servitude, and there is no legal basis that allows Florida Gas to routinely conduct pressure releases at the frequency and volume which they are currently being conducted.

21(p).

The noise caused by the long, loud pressure releases following the June 18, 2013, rupture is overt, persistent, and ongoing, and has a cumulative effect of causing continuous damage to Plaintiffs, as the pressure releases continue to this very day.

21(q).

The overt, persistent, and ongoing pressure releases, that have occurred and that continue to occur following the June 18, 2013, rupture constitute a continuing tort as the unlawful activities of Florida Gas continue to cause Plaintiffs to experience a deprivation of their right to enjoy their residences.

21(r).

Florida Gas is a "proprietor" as that term is contemplated by Louisiana Civil Code articles 667, 668, and 669.

21(s).

The continuous, ongoing pressure releases complained of herein constitutes conduct that violates the pronouncements embodied in Louisiana Civil Code articles 667, 668, and 669.

21(t).

All Plaintiffs seek, and aver that they are entitled to receive all modes of recovery available, including monetary damages and injunctive relief, as a result of Defendant's continuing tortious conduct which violates Louisiana Civil Code articles 667, 668, and 669.

21(u).

All Plaintiffs demand and are entitled to a declaratory judgment and/or injunctive relief from this Honorable Court ordering Defendant, Florida Gas Transmission Company, L.L.C., to immediately cease all pressure releases that rise to the level of a nuisance that interferes with Plaintiffs' use and enjoyment of their residences and property as a result of the pressure releases complained of herein.

21(v).

Following the June 18, 2013, rupture, Plaintiffs have heard a  drastic increase in activity at the Florida Gas compressor station located in/near Franklinton, Louisiana. More particularly, following the June 18, 2013, rupture Plaintiffs in the vicinity of the compressor station and Pipeline began hearing a deep, rumbling type sound that Plaintiffs did not hear prior to the June 18, 2013, incident.

21(w).

The deep rumbling sound is overt, persistent, and ongoing, and persists through the day and night.

21(x).

The deep rumbling sounds have caused and continue to cause Plaintiffs who reside within the vicinity of the compressor station to experience a pervasive and constant fear that a rupture, explosion, and fire, similar to the June 18, 2013, incident will occur in the future.

21(y).

The deep rumbling sounds that have occurred, and that continue to occur, on a daily and nightly basis can be clearly heard and identified by Plaintiffs who reside within and/or are located within the vicinity of the compressor station and/or Pipeline.

21(z).

Plaintiffs did not hear the deep rumbling sounds that have occurred, and that continue to occur, on a daily and nightly basis, prior to the June 18, 2013, rupture.

21(aa).

The deep rumbling sounds are excessive in volume and have caused and continue to cause Plaintiffs to experience aggravation that rises to a level much higher than an inconvenience.

21(bb).

The deep rumbling sounds have caused and continue to cause Plaintiffs to experience mental stress, fear, and anxiety, as the rumbling sound is a constant reminder of the June 18, 2013, rupture, fire, and explosion, and causes Plaintiffs

within the vicinity to constantly fear that another explosion similar to that of June 18, 2013, will occur again in the immediate future.

21(cc).

The deep rumbling sounds following the June 18, 2013, rupture are a direct violation of local customs concerning noise and the use and enjoyment of one's property and/or residence.

21(dd).

The deep rumbling sounds following the June 18, 2013, rupture have caused and continue to cause a disruption in Plaintiffs' daily activities, which is a nuisance and constitutes a continuing tort.

21(ee).

The deep rumbling sounds following the June 18, 2013, rupture have caused and continue to cause a substantial interference and infringement upon Plaintiffs' right to enjoy their land and/or residences, which is a nuisance and constitutes a continuing tort.

21(ff).

The deep rumbling sounds following the June 18, 2013, rupture are injurious and offensive to Plaintiffs who reside in the vicinity of the Pipeline, and/or the compressor station, and/or the valves located along the Pipeline.

21(gg).

Florida Gas has not been granted a servitude, and there is no legal basis that allows Florida Gas to engage in operations that cause and/or allow the deep rumbling sounds to persist on a daily and nightly basis.

21(hh).

The noise caused by the deep rumbling sounds following the June 18, 2013, rupture is overt, persistent, and ongoing, and has a cumulative effect of causing continuous damage to Plaintiffs, as the deep rumbling sounds continue to this very day.

21(ii).

The overt, persistent, and ongoing deep rumbling sounds, that have occurred and that continue to occur following the June 18, 2013, rupture constitute a continuing tort as the unlawful activities of Florida Gas continue to cause Plaintiffs to experience a deprivation of their right to enjoy their residences.

21(jj).

Florida Gas is a "proprietor" as that term is contemplated by Louisiana Civil Code article 667, 668, and 669.

21(kk).

The deep rumbling sounds complained of herein constitute conduct that violates the pronouncements embodied in Louisiana Civil Code articles 667, 668, and 669.

21(ll).

All Plaintiffs seek, and aver that they are entitled to receive all modes of recovery available, including monetary damages and injunctive relief, as a result of Defendant's continuing tortious conduct which violates Louisiana Civil Code articles 667, 668, and 669.

21(mm).

All Plaintiffs demand and are entitled to a declaratory judgment and/or injunctive relief from this Honorable Court ordering Defendant, Florida Gas Transmission Company, L.L.C., to immediately cease all activities and/or operations that cause the deep rumbling sound, as the deep rumbling sound rises to the level of a nuisance that interferes with Plaintiffs' use and enjoyment of their residences and property.

21(nn).

Defendant's actions in the continuing operation of the Pipeline, including the noise caused by the pressure releases and the deep rumbling sounds complained of herein, have caused and will continue to cause Plaintiffs to sustain damages until said operations cease, which event has not yet occurred.

V.

Paragraphs 22 through 26 of Plaintiffs original complaint and first supplemental and amending complaint are to remain the same.

VI.

Paragraph 27 of Plaintiffs' Original Complaint and First Supplemental and Amending Complaint is to be supplemented and amended in order to read as follows:

VII.

27.

## DECREASE IN PROPERTY VALUE

All of the allegations plead in Plaintiffs Original Complaint, First Supplemental and Amending Complaint, and this Second Supplemental and Amending Complaint are deemed pled herein as if set out *in extenso*.

27(a).

The rupture of June 18, 2013, the ongoing pressure releases complained of herein, the deep rumbling sounds that persist through the day and night, and the ongoing, continued operation of the Pipeline in its current state of disrepair, has caused and continues to cause a substantial decrease in the fair market value of Plaintiffs immovable property, to their direct economic detriment through absolutely no fault on the part of the Plaintiffs.

27(b).

The ongoing pressure releases complained of herein, has caused and continues to cause a substantial decrease in the fair market value of Plaintiffs immovable property, to their direct economic detriment through absolutely no fault on the part of the Plaintiffs.

27(c).

The deep rumbling sounds that persist through the day and night, complained of herein, has caused and continues to cause a substantial decrease in the fair market value of Plaintiffs immovable property, to their direct economic detriment through absolutely no fault on the part of the Plaintiffs.

27(d).

The ongoing, continued operation of the Pipeline in its current state of disrepair that persist through the day and night, complained of herein, has caused and continues to cause a substantial decrease in the fair market value of Plaintiffs immovable property, to their direct economic detriment through absolutely no fault on the part of the Plaintiffs.

27(e).

The cumulative effect of the rupture of June 18, 2013, the ongoing pressure releases complained of herein, the deep rumbling sounds that persist through the day and night, and the ongoing, continued operation of the Pipeline in its current state of disrepair, has caused and continues to cause a substantial decrease in the fair market value of Plaintiffs immovable property, to their direct economic detriment through absolutely no fault on the part of the Plaintiffs.

27(f).

Defendant's actions are tortious conduct is persistent and ongoing, and Plaintiffs' damages will continue until such time as Defendant's conduct has ceased, which event has not yet occurred.

VIII.

Paragraph 28 of Plaintiffs' Original Complaint and First Supplemental and Amending Complaint is to be supplemented and amended in order to read as follows:

28.

The cumulative effect of the rupture of June 18, 2013, the ongoing pressure releases complained of herein, the deep rumbling sounds that persist

through the day and night, and the ongoing, continued operation of the Pipeline in its current state of disrepair, have caused and will continue to cause loss of revenue and equity value to Plaintiffs, who have sustained and will continue to sustain a loss in their property values, as continued operation of the Pipeline poses an unreasonable risk of harm to any individual(s) located near the Pipeline.

IX.

Paragraph 29 of Plaintiffs' Original Complaint and First Supplemental and Amending Complaint is to be supplemented and amended in order to read as follows:

29.

More particularly, the following Plaintiffs have experienced a diminution in the value of their immovable property as a direct result of the Pipeline's rupture, explosion, and fire, at issue herein:

A. Brigitte Thomas;

B. Mariah Harrison;

C. James Hebert;

D. Kendra Reeves;

E. Jeff Reeves;

F. Regina Sandifer;

G. Victoria St. Pierre;

H. Ray St. Pierre;

I. Crystal Taylor;

J. Tia Taylor;

K. Robert Brown;

L. Delos Williams; and

M. Leverne Williams.

X.

Paragraph 30 of Plaintiffs' Original Complaint and First Supplemental and Amending Complaint is to be supplemented and amended in order to read as follows:

30.

## **TOXIC EXPOSURE**

All of the allegations plead in Plaintiffs Original Complaint, First Supplemental and Amending Complaint, and this Second Supplemental and Amending Complaint are deemed pled herein as if set out *in extenso*.

30(a).

Upon information and belief, the gas released from the Pipeline during the June 18, 2013, rupture, explosion, and fire, at issue, caused toxic chemicals, chemical components and gasses, all of which are harmful to human health, to be released into the atmosphere.

30(b).

The overt, persistent, and ongoing pressure releases, that have occurred and that continue to occur following the June 18, 2013, which are complained of herein, cause toxic chemicals, chemical components and gasses, all of which are harmful to human health, to be released into the atmosphere.

30(c).

The overt, persistent, and ongoing pressure releases cause natural gas, toxic chemicals, components of natural gas, chemical treatments, gasses, and other substances, all of which are harmful to human health, to enter, or cross the property owned and/or occupied by Plaintiffs.

XI.

Paragraph 31 of Plaintiffs' Original Complaint and First Supplemental and Amending Complaint is to be supplemented and amended in order to read as follows:

31.

Upon entry into the atmosphere, the toxic chemicals, chemical components, and gasses that are released into the atmosphere were, and are, carried by winds thereby exposing all of the named Plaintiffs to the said toxic chemicals, chemical components, and gasses, which in turn has caused and continues to cause damage to the named Plaintiffs.

31(a).

The continued releases of toxic chemicals, chemical components, and gasses, all of which are harmful to human health, into the atmosphere, such that said toxins enter, or cross the property owned and/or occupied by Plaintiffs constitutes a continuing tort, as those pressure releases persist and have not ceased and Plaintiffs' exposure to said toxins is continuous.

XII.

Paragraph 32 of Plaintiffs Original Complaint and First Supplemental and Amending Complaint is to be supplemented and amended in order to read as follows:

32.

## **BODILY INJURIES**

All of the allegations plead in Plaintiffs Original Complaint, First Supplemental and Amending Complaint, and this Second Supplemental and Amending Complaint are deemed pled herein as if set out *in extenso*.

32(a).

In addition to the property damage and economic loss referenced hereinabove, as a result of the rupture of June 18, 2013, and the ongoing, continuous pressure releases, and the deep rumbling sounds which can be heard throughout the day and night, all Plaintiffs sustained bodily injuries, and continue to sustain bodily injuries, including, but not limited to, shock to their nervous system and psyche, including, stress, fear, and anxiety, the final sequella of which is currently unknown.

XIII.

Paragraph 33 of Plaintiffs Original Complaint and First Supplemental and Amending Complaint is to remain the same.

XIV.

Paragraph 34 of Plaintiffs' Original Complaint and First Supplemental and Amending Complaint is to be supplemented and amended in order to read as follows:

34.

As a direct result of the incidents forming the basis of this suit, including the continuous, ongoing pressure releases; the deep rumbling sounds which persist through the day and night, and their exposure to toxic chemicals, components of natural gas, chemical treatments, gasses, and other substances, all of which are harmful to human health, all of the named Plaintiffs have experienced, and continue to experience, mental and emotional distress.

34(a).

One example of the emotional distress caused by the ongoing operation of the Pipeline, is the experience of Plaintiff, Victoria St. Pierre, who, because of the proximity of her home from the Pipeline operations, can hear the ongoing, continuous pressure releases, and the deep rumbling sounds throughout the day and night, which causes her to live with the constant fear that another incident, similar to that of June 18, 2013, is likely to reoccur at any moment, which causes Ms. St. Pierre to experience constant stress and anxiety.

35(b).

The emotional distress and anxiety that Plaintiffs continue to experience will not cease until such time as the continuous pressure releases, and the deep rumbling sounds cease, and Plaintiffs have received proof that the Pipeline is not corroded to such an extent that its continued use does not pose an unreasonable risk of harm.

XV.

Paragraph 36 of Plaintiffs' Original Complaint and First Supplemental and Amending Complaint is to be supplemented and amended in order to read as follows:

36.

**LOSS OF USE AND INCONVENIENCE**

All of the allegations plead in Plaintiffs Original Complaint, First Supplemental and Amending Complaint, and this Second Supplemental and Amending Complaint are deemed pled herein as if set out *in extenso*.

36(a).

Certain Plaintiffs were forced to evacuate from their homes and property as a direct result of the Pipeline rupture, explosion and fire, at issue in this suit. As a direct result of that immediate and mandatory evacuation, Plaintiffs feared that their homes and land were in jeopardy which caused fear and emotional distress. Additionally, during the period of evacuation, Plaintiffs lost the use and enjoyment of their homes and property, all as a direct result of the Pipeline rupture, explosion and fire.

36(b).

As a direct result of the incidents forming the basis of this suit, including the continuous, ongoing pressure releases; the deep rumbling sounds which persist through the day and night, and their exposure to toxic chemicals, components of natural gas, chemical treatments, gasses, and other substances, all of which are harmful to human health, Plaintiffs have experienced, and continue to experience, loss of the use and enjoyment of their property.

36(c).

The specific Plaintiffs who have experienced and continue to experience loss of use and enjoyment of their property as a direct result of the incidents forming the basis of this suit, including the continuous, ongoing pressure releases; the deep rumbling sounds which persist through the day and night, and their exposure to toxic chemicals, components of natural gas, chemical treatments, gasses, and other substances, all of which are harmful to human health, are as follows:

A.      Brigitte Thomas;

B.      Roderick Brown;

C.      Mariah Harrison;

D.      James Hebert;

E.      Renee Hebert;

F.      Michael Hebert;

G.      Katie Hebert;

H.      Brayden Hebert;

I.      Paige Hebert;

J.      Allison King;

K.      Jessica McLean;

L.      Sheila McLean;

M.      Jeff Reeves;

N.      Kendra Reeves;

O.      Kelley Sandifer;

P.      Victoria St. Pierre;

Q.      Calob Stephens;

R.      Amanda Stephens;

S.      Aron Stephens;

T.      Chrystal Taylor;

U.      Tia Taylor; and

V.      Laverne Williams

XVI.

Paragraph 37 of Plaintiffs' Original Complaint and First Supplemental and mending Complaint are to remain the same.

XVII.

Paragraph 38 of Plaintiffs' Original Complaint and First Supplemental and Amending Complaint are to be supplemented and amended in order to read as follows:

38.

There are many other potential effects from the Pipeline rupture, fire, and explosion that have not yet become known, and Plaintiffs reserve the right to amend this Complaint once additional information becomes available.

38(a).

All of the allegations plead in Plaintiffs Original Complaint, First Supplemental and Amending Complaint, and this Second Supplemental and Amending Complaint are deemed pled herein as if set out *in extenso*.

38(b).

**<u>TRESPASS</u>**

The pressure releases that have occurred, and that continue to occur, cause natural gas, toxic chemicals, components of natural gas, chemical treatments, gasses, and other substances, all of which are harmful to human health, to enter, or cross the property owned and/or occupied by Plaintiffs.

38(c).

The pressure releases that have occurred, and that continue to occur, cause natural gas, toxic chemicals, components of natural gas, chemical treatments, gasses, and other substances, all of which are harmful to human health, to enter into the atmosphere in amounts that exceed the limits imposed upon Florida Gas by law, and/or by the permits issued to Florida Gas.

38(d).

Upon entry into the atmosphere, the toxic chemicals, chemical components, and gasses that are released into the atmosphere were, and are,

carried by winds onto and across the Property owned and occupied by Plaintiffs, and the continued entry of said substances onto the land owned and/or occupied by Plaintiffs amounts to trespass, for which Plaintiffs seek recovery herein.

38(e).

The natural gas, toxic chemicals, components of natural gas, chemical treatments, gasses, and other substances, all of which are harmful to human health, that have crossed and that continue to cross and/or enter and/or remain upon Plaintiffs' property constitutes an unlawful physical invasion of Plaintiffs' property.

38(f).

The unlawful physical invasion of Plaintiffs' property and/or residences, which constitutes trespass, is a direct result of the intentional acts of Florida Gas in conducting the continuous, ongoing, pressure releases complained of herein.

38(g).

Alternatively, the unlawful physical invasion of Plaintiffs' property and/or residences, which constitutes trespass, is a direct result of Defendant's negligence, as Defendant, Florida Gas, knew, or should have known, and knows, or should know, that the natural gas, toxic chemicals, components of natural gas, chemical treatments, gasses, and other substances, all of which are harmful to human health, that have crossed and that continue to cross and/or enter and/or remain upon Plaintiffs' property would be the result of the ongoing continuous, ongoing, pressure releases complained of herein.

XVIII.

Paragraph 39 of Plaintiffs' Original Complaint and First Supplemental and mending Complaint is to remain the same.

XIX.

Paragraph 40 of Plaintiffs' Original Complaint and First Supplemental and Amending Complaint are to be supplemented and amended in order to read as follows:

40.

The sole and proximate cause of the incidents forming the basis of this suit and the injuries and damages sustained, and that continue to be sustained by Plaintiffs is and was the gross and wanton negligence, carelessness and recklessness of Defendant, Florida Gas Transmission Company, L.L.C., in the following non-exclusive particulars, to-wit:

a.      Failing to properly operate the Pipeline in a safe, prudent, and reasonable manner;

b.      Operating the Pipeline in such a manner that a rupture, fire and explosion occurred;

c.      Failing to properly inspect the Pipeline to ensure that it was fit for its intended purpose;

d.      Acting in a careless and/or negligent manner without due regard for the safety of others and the foreseeable victims of their acts and/or omissions which constitute negligence;

e.      Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations of the Pipeline which, if

Defendant had so promulgated, implemented and enforced, would have prevented the rupture, explosion and fire;

f.  Operating the Pipeline in an unsafe manner by employing untrained and/or unlicensed personnel to operate the Pipeline;

g.  Inadequate training and/or hiring of personnel;

h.  Failing to take appropriate action to avoid and/or mitigate the incident once the event occurred and, thus unreasonably exacerbated the damages as to the plaintiffs herein;

i.  Negligent implementation of policies and procedures to safely conduct natural gas transmission operations designed to prevent the type of incident detailed herein;

j.  Employing untrained and/or poorly trained employees and/or failing to properly train their employees;

k.  Failing to ascertain that the Pipeline and its equipment were free from defects and/or were in proper working order;

l.  Failing to timely warn plaintiffs of the hazardous conditions known to them which caused injury to plaintiffs;

m.  Failure to timely bring the natural gas release under control;

n.  Failure to keep appropriate accident prevention and response equipment on hand so as to quickly respond to the type of incident detailed herein;

o.  Failure to observe and read gauges that would have indicated excessive pressures in the Pipeline;

p.      Failure to react to danger signs and/or signals when Defendant was

in a superior position to do so;

q.      Failing to properly inspect and test the Pipeline to ensure its fitness

for use and its structural integrity, as proper inspection and testing

of the Pipeline would have and will reveal(ed) corrosion on the

interior and exterior wall(s) of the Pipeline which presented an

unreasonable  risk of harm during natural gas transmission

operations;

r.      Failing to timely inspect and test the Pipeline to ensure its fitness

for use and its structural integrity, as timely inspection and testing

of the Pipeline would have and will reveal(ed) that corrosion on

the interior and exterior wall(s) of the Pipeline presents an

unreasonable risk of harm during natural gas transmission

operations;

s.      Failing to take remedial and/or corrective action to repair the

Pipeline while having actual knowledge of the unreasonably

dangerous condition presented by the corrosion on the interior and

exterior walls of the Pipeline;

t.      Operating a Pipeline that was unreasonably dangerous under the

circumstances;

u.      Continuing natural gas transmission operations while having actual

knowledge of  the rupture that occurred on a different segment of

the same Pipeline, namely the rupture that occurred on February

13, 2012, near the Zachary Compressor Station, under similar

operating pressures;

v.      Failing to adequately maintain the cathodic rust prevention system

in order to prevent corrosion to Pipeline, which renders the

pipeline unsafe for use;

w.      Failing to adequately inform the various federal, state, and local

agencies that responded to the incident of the magnitude of the

potential danger posed by the Pipeline before the explosion and

fire were brought under control;

x.      Failing to implement and employ an adequate set of procedures for

the evacuation of individuals when a rupture occurs and hazardous

material(s), including but not limited to natural gas, is released into

the atmosphere and environment;

y.      Failing to bring the fire under control in a reasonably timely

fashion under the circumstances; and

z.      Continued operation of the Pipeline while having actual and/or

constructive knowledge that the pressure of the gas inside the

Pipeline exceeds the amounts allowed by law or order of a

governing body and/or agency;

aa.     Continued operation of the Pipeline while having actual and/or

constructive knowledge that the pressure of the gas inside the

Pipeline exceeds that which is safe.

  bb. All other acts and/or omissions that will be proven at the trial of

this matter, all of which acts and omissions are in violation of

Federal laws which govern the use and transmission of natural gas

pipelines, the laws of the State of Texas, the laws of the State of

Louisiana, and the laws of other States through which the Pipeline

traverses.

XX.

Paragraph 41 of Plaintiffs' Original Complaint and First Supplemental and amending Complaint is to be supplemented and amended in order to read as follows:

41.

  The continuous, ongoing pressure releases; the deep rumbling sounds which persist through the day and night, the exposure to toxic chemicals, components of natural gas, chemical treatments, gasses, and other substances, all of which are harmful to human health, and the rupture, explosion, and fire, and resulting damages were and are caused by defective equipment, including but not limited to the Pipeline, gauges, testing equipment, and inspection equipment, which, at all times relevant hereto, are and were in the care, custody, and control of Defendant, Florida Gas, and over which Defendant had *garde*. Florida Gas knows and/or should know and/or should have known of these defects and Florida Gas is therefore liable for all damages sustained by Plaintiffs as alleged herein.

XXI.

Paragraph 42 of Plaintiffs' Original Complaint and First Supplemental and amending Complaint is to be supplemented and amended in order to read as follows:

42.

The injuries and damages to Plaintiffs are also caused and/or aggravated by the fact that Defendant, Florida Gas, fails to take necessary actions to mitigate the danger associated with its operations.

XXII.

All subparts of Paragraph 42 are to be supplemented and amended in order to read and correctly be numbered as follows:

42(a).

To date, Defendant, Florida Gas, continues to operate the Pipeline, which causes an ongoing risk of harm to Plaintiffs and to the public and the training, hiring and firing of personnel required to ensure the safety of the pipe line at all times relevant hereto was vested in the corporate offices of Defendant, Florida Gas, in the State of Texas.

42(b).

More particularly, upon information and belief, Florida Gas has taken no remedial measures in order to prevent a future incident from occurring.

42(c).

Defendant, Florida Gas, has actual and/or constructive knowledge of the dangerous condition that currently exists, namely corrosion of the Pipeline, and has failed to take any remedial and/or corrective action.

42(d).

A major component of the safe use and transmission of natural gas requires that the gas be odorized prior to its delivery to consumers. That is, the

smell of "rotten eggs" that users of natural gas are familiar with is added to natural gas before its delivery to the consumer. The sole purpose of adding the odor of rotten eggs to natural gas is to alert individuals, such as Plaintiffs, that natural gas is present in the air, and, in turn, poses a risk of fire and/or explosion.

42(e).

The natural gas that flows through the Pipeline at issue in this case is not odorized which presents further unreasonable and ultra hazardous risks and ongoing damages to plaintiffs at all times relevant hereto to the present which represent a continuing tort.

42(f).

Plaintiffs are acutely aware of the Pipeline's current state of deterioration, and since the date of the rupture, explosion, and fire at issue in this case, Plaintiffs have learned that the natural gas contained in the Pipeline is not odorized. The combination of these factors leaves Plaintiffs helpless, because they have no way of knowing if, or when, another rupture, fire, and/or explosion will occur.

42(g).

The natural gas transmitted by the Pipeline contains harmful chemicals and components, including, but not limited to benzene, all of which, if inhaled, are harmful to human health.

42(h).

Plaintiffs continue to fear their health and for the health of their families, as the continued use and operation of the Pipeline in its current state of deterioration causes Plaintiffs to fear that they are inhaling and/or being exposed

to toxic chemicals and/or chemical components that they cannot detect, and therefore cannot avoid.

42(i).

Plaintiffs have not received any reassurances whatsoever from Defendant, Florida Gas, that remedial measures have been taken ensure that continued use and operation of the Pipeline is safe.

42(j).

The ongoing use and operation of the pipeline causes Plaintiffs to experience ongoing fear and freight, as they have no way of knowing that they are safe when they are near the Pipeline.

42(k).

The continued use and operation of the Pipeline in its current state of deterioration has caused, and continues to cause, Plaintiffs to fear for their safety and for the safety of their families. As such, the tortuous conduct of Defendant, Florida Gas, continues to this very day, and Plaintiffs will continue to sustain damages until such time as Florida Gas has taken the proper remedial measures to ensure that continued operation of the Pipeline does not pose an unreasonable risk of harm.

42(l).

Defendant's current, ongoing use of the Pipeline constitutes a permanent nuisance, as it interferes with Plaintiffs use and enjoyment of the land and surrounding property.

42(m).

The Pipeline, in its current state of disrepair, constitutes an underground hazard that causes Plaintiffs to experience unnecessary discomfort and annoyance.

XXIII.

Paragraph 43 of Plaintiffs' Original Complaint and First Supplemental and Amending Complaint is to remain the same.

XXIV.

Paragraph 44 of Plaintiffs' Original Complaint and First Supplemental and amending Complaint is to be supplemented and amended in order to read as follows:

44.

Upon information and belief, the continuous, ongoing pressure releases; the deep rumbling sounds which persist through the day and night, Plaintiffs exposure to toxic chemicals, components of natural gas, chemical treatments, gasses, and other substances, all of which are harmful to human health, and the rupture, explosion, and fire, are all a result of the Pipeline failing to operate as intended. Specifically, the Pipeline is unfit for its intended use, and is unreasonably dangerous in its design, manufacture and construction. The Pipeline is defective because it fails to operate as intended. As such, Florida Gas is liable to Plaintiffs for its continued use and operation of the out-dated and/or substandard Pipeline which continues to cause Plaintiffs to sustain damages.

XXV.

Paragraphs 45 through 48 of Plaintiffs' Original Complaint and First Supplemental and Amending Complaint are to remain the same.

XXVI.

Paragraph 49 of Plaintiffs' Original Complaint and First Supplemental and Amending Complaint is to be supplemented and amended in order to read as follows:

49.

The acts and/or omissions of Defendant, Florida Gas, and/or its employees, and/or representatives and/or agents have caused, are causing, and will continue to cause Plaintiffs to sustain injuries and damages.

XXVII.

Paragraph 50 of Plaintiffs' Original Complaint and First Supplemental and Amending Complaint is to remain the same.

XXVIII.

Paragraph 51 of Plaintiffs' Original Complaint and First Supplemental and Amending Complaint is to be supplemented and amended in order to read as follows:

51.

Defendant, Florida Gas, is therefore liable jointly, severally and *in solido* unto Plaintiffs for the damages and losses sustained, and the damages and losses that Plaintiffs continue to sustain, as a result of the incidents complained of herein, which are itemized and non-exclusively set out hereafter.

XXIX.

Paragraphs 52 through 56 of Plaintiffs' Original Complaint and First Supplemental and Amending Complaint are to remain the same.

XXX.

Plaintiffs Prayer for Relief is to be supplemented and amended in order to read as follows:

### **PRAYER FOR RELIEF**

**WHEREFORE**, all named Plaintiffs in the above captioned consolidated causes of action respectfully pray:

a.      That Defendant, Florida Gas Transmission Company, L.L.C., be served with a  copy of this Original Complaint, through its registered agent for service of process,  Corporation Service Company, 320 Somerlouse Street, Baton Rouge, Louisiana 70802, and be duly cited to appear and answer same according to law;

b.      That after the lapse of all legal delays and proceedings had, there be judgment entered herein in favor of all Plaintiffs and against Defendant, Florida Gas Transmission Company, L.L.C., jointly, severally and *in solido* in an amount fair and reasonable under the premises of this matter;

c.      That a judgment be entered herein declaring that the ongoing use and operation of the Pipeline in its current state of disrepair and deterioration poses an unreasonable risk of harm.

d.      That a judgment be entered herein ordering Defendant, Florida Gas Transmission  Company, L.L.C., to immediately inspect, test, and take remedial and corrective  action as necessary in order to ensure Plaintiffs safety.

e.      That declaratory and/or injunctive relief be ordered by this
Honorable Court pursuant to federal and/or state statutes and
regulations regarding gas pipeline hazard reporting, mitigation and
response planning as well as operator training and/or qualifications
against Defendant, Florida Gas Transmission Company, L.L.C., to
immediately institute a mandated and monitored hazard reporting
system and response plan and/or remediation, schedule of testing,
maintenance, and repair, of the Pipeline for the foreseeable future
and to perform due diligence so as to ensure that incidents similar
to those forming the basis of this suit do not occur in the future.

f.      Pre-judgment and post-judgment interest at the maximum rate
allowable by law on all amounts awarded;

g.      Attorney's fees and the expenses and costs of this litigation;

h.      A trial by jury as to all Defendants named or to be named at a later
date, on all causes of action asserted herein; and

i.      For all necessary orders and decrees as may be required or are
proper in the   premises and for full general and equitable relief
amenable under the circumstances.


## PRAYER FOR RELIEF

**WHEREFORE**, all named Plaintiffs in the above captioned consolidated causes of
action respectfully pray:

a.    That Defendant, Florida Gas Transmission Company, L.L.C., be served with a copy of this Original Complaint, through its registered agent for service of process,  Corporation Service Company, 320 Somerlouse Street, Baton Rouge, Louisiana 70802, and be duly cited to appear and answer same according to law;

b.    That after the lapse of all legal delays and proceedings had, there be judgment entered herein in favor of all Plaintiffs and against Defendant, Florida Gas Transmission Company, L.L.C., jointly, severally and *in solido* in an amount fair and reasonable under the premises of this matter;

c.    That a judgment be entered herein declaring that the ongoing use and operation of the Pipeline in its current state of disrepair and deterioration poses an unreasonable risk of harm.

d.    That a judgment be entered herein ordering Defendant, Florida Gas Transmission Company, L.L.C., to immediately inspect, test, and take remedial and corrective action as necessary in order to ensure Plaintiffs safety.

e.    That declaratory and/or injunctive relief be ordered by this Honorable Court pursuant to federal and/or state statutes and regulations regarding gas pipeline hazard reporting, mitigation and response planning as well as operator training and/or qualifications against Defendant, Florida Gas Transmission Company, L.L.C., to immediately institute a mandated and monitored hazard reporting system and response plan and/or remediation, schedule of testing, maintenance, and repair, of the Pipeline for the foreseeable future and to perform due diligence so as to ensure that

incidents similar to those forming the basis of this suit do not occur in the future.

f.      Pre-judgment and post-judgment interest at the maximum rate allowable by law on all amounts awarded;

g.      Attorney's fees and the expenses and costs of this litigation;

h.      A trial by jury as to all Defendants named or to be named at a later date, on all causes of action asserted herein; and

i.      For all necessary orders and decrees as may be required or are proper in the premises and for full general and equitable relief amenable under the circumstances.

Respectfully Submitted,

  [s/] Shawn C. Reed_____
D. DOUGLAS HOWARD, JR. (No. 7021)(T.A.)
dhoward@howardandreed.com
JONATHAN C. PEDERSEN (No. 32290)(T.A.)
jcpedersen@howardandreed.com
839 St. Charles Avenue, Suite 306
New Orleans, Louisiana 70130
Telephone (504) 581-3610
Facsimile  (504) 581-7509

SHAWN C. REED (No. 14304)(T.A.)
sreed@howardandreed.com
KYLE DEL HIERRO (No. 21557)
Kdelhierro@howardandreed.com
516 N. Columbia Street
Covington, Louisiana 70433
Telephone: (985) 893-3607
Facsimile: (985) 893-3478

— AND —

WILLIAM H. ARATA (#23431)(T.A.)
Aratalaw@bellsouth.net
216 Austin Street
Bogalusa, LA  70427
Telephone: (985) 735-1368

**ATTORNEYS FOR ALL NAMED PLAINTIFFS**